# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARON BERDAHL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-89-RAW-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Sharon Berdahl requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-three years old at the time of the administrative hearing (Tr. 36). She completed high school and one year of college-level work and has worked as a nurse assistant and medical records clerk (Tr. 26, 230). The claimant alleges inability to work since September 12, 2015,[2] due to depression, anxiety, panic attacks, low back pain, hip and right leg pain, breathing issues, and right shoulder pain (Tr. 229).

### Procedural History

On September 29, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 18, 2017 (Tr. 15-27). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined

---

[2] The claimant previously applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI on September 26, 2012 and October 2, 2012, respectively. The application was denied, and ALJ Doug Gabbard, II, determined that the claimant was not disabled on September 11, 2014 (Tr. 70-79). The Appeals Council denied review.

in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry/push/pull up to twenty pounds occasionally and ten pounds frequently, and stand/walk and sit up to six hours each in an eight-hour workday, but that she could only occasionally climb stairs/ramps/ladders/ropes/scaffolds, as well as stoop, kneel, crouch, crawl, and reach above the head with the right arm.  He further found she could use foot controls frequently with the right leg, but that she could only have occasional exposure to fumes, odors, dusts, toxins, gases, and poor ventilation.  Finally, he found she could do simple and routine tasks, allowing for unskilled work, provided that she have only superficial contact with co-workers and supervisors (contact similar to that a grocery clerk might have with co-workers and supervisors), and that she cannot have contact with the public (Tr. 19).  The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because she there was work she could perform in the economy, *e. g.*, food product sorter, inspector/hand packer, or small product assembler (Tr. 26-27).

### Review

The claimant contends that the ALJ erred by:  (i) improperly assessing her pain with respect to her subjective complaints, and (ii) failing to account for all her limitations, specifically her use of a cane and limitations related to her feet, hips, and joints.  Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of lumbosacral pain, degenerative joint disease of the bilateral hips, right leg pain, chronic pulmonary insufficiency, right shoulder derangement, depression, and anxiety (Tr. 17).  The relevant

-4-

medical evidence demonstrates that the claimant reported pain in her lower back, radiating to her hip, as well as weakness in the back and legs (Tr. 320). In October 2014, which was prior to the alleged onset date, the claimant reported worsening back pain and trouble with her gait, including being unsteady at times and at risk of falling (Tr. 414). In May 2015 she was unable to perform tandem walking, heel walking, or toe walking because she ambulated with a cane, her Romberg test was positive, and when demonstrating conventional walking she was unable to turn quickly and had a painful gait (Tr. 332). In August of that same year, the claimant reported pain in the right leg and right shoulder and demonstrated an abnormal exam of the right shoulder with decreased range of motion, as well as pain with motion of the back (Tr. 441-442).

At the claimant's mental status examination on January 12, 2016, Dr. Theresa Horton, Ph.D., noted that the claimant walked slowly with the assistance of a cane, appeared to experience pain and experienced difficulty rising from a sitting position (Tr. 458). On February 19, 2016, treatment notes reflect that the claimant's back pain was supported by evidence of degenerative changes with broad based disc (Tr. 472). She was reportedly working three to four days per month, which was noted to be not enough to support herself (Tr. 472). The following month, the claimant's treating physician Dr. Sutterfield referred the claimant to Dr. Brian Goodman, who works in pain medicine. Upon examining the claimant, Dr. Goodman found that the claimant was experiencing mechanical axial pain with referral pain patterns to the right and recommended a lumbar medical branch block as a first step for pain reduction, which she underwent. If that did not work, then he recommended two rounds of epidural steroid injections. He did not

recommend activity restrictions (Tr. 496, 502). At a neurology consult on October 24, 2016, Dr. Steve-Felix Balinga assessed the claimant with severe degenerative joint disease of the lumbar spine, noting that she appeared to have degenerative joint disease of the right hip as well, including radicular symptoms and subjective weakness in the right lower extremity (Tr. 508). He ordered further testing, including MRIs (Tr. 508). Results of the MRIs included protrusion of L4/L5, retrolisthesis, and disc protrusions between all lumbar and the lower thoracic (Tr. 509-512). Treatment notes indicated the claimant had had a number of falls, had to have assistance getting in and out of the shower, and had to have assistance to tie her shoes due to an inability to bend (Tr. 512). A review of systems noted, *inter alia*, positive for gait disturbance, impaired coordination/balance, and numbness/tingling (Tr. 514). Dr. Sutterfield noted that the claimant's diagnoses included disc protrusion and neuropathy and stated that she did not feel the claimant was able to participate in any gainful employment secondary to these issues and her examination of the claimant (Tr. 515).

State reviewing physicians indicated that, physically, the claimant could perform light work but could use a cane for comfort, and that she had the additional limitations of only occasionally climbing ramps/stairs/ladders/ropes/scaffolds, stooping, kneeling, crouching, and crawling, and that she was limited to occasional overhead reaching with the right upper extremity. Additionally, they found she should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 103-105, 124-126). Neither of these physicians had the benefit of the most recent MRI, nor of Dr. Sutterfield's more recent treating notes indicating a continued worsening of the claimant's condition

confirmed by these tests. Nor did the state physicians explained why the prescribed cane was only useful "for comfort," despite the medical records they *did* have, which indicated the claimant was using the cane daily by at least October 2015 (Tr. 103-105, 124-126).

At the administrative hearing, the claimant testified that she had been using a cane for approximately two years to help with balance and prevent falls that had become more frequent (Tr. 44-45). She testified that, at the time of the hearing, she was unable to walk without a cane, and could only walk very short distances (less than eight feet) without it, even using it in her home (Tr. 45). The claimant performed less than substantial gainful activity up through the second quarter of 2016 (a year after her alleged onset date), and she testified that she did not use her cane when working part time as a nurse's assistant (Tr. 53-55, 64). She stated that her walking had been more proscribed in the past year after she quit the part-time work, and she had been using the cane "more consistently" (Tr. 65). The vocational expert testified that if the claimant had to use a cane on a consistent and ongoing basis, there was no light work the claimant could perform, but there was sedentary work she could perform (Tr. 65). The ALJ's response was that the claimant would "grid out," *i. e.*, be found disabled, if she were limited to sedentary work (Tr. 65).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. The ALJ assigned little weight to the claimant's testimony, partially because she testified she needed the cane even to ambulate around her house, but stated that she had not used the cane when working part-time a year previously. He then cited evidence that the claimant was able to walk on her toes and heels, and that she exhibited a normal tandem walk (Tr. 20-21). He noted 2015 medical records where

the claimant was unable to perform tandem walking and heel walking because she walked with a cane but appeared to question this evidence by using the modifier "reportedly" (Tr. 22).  He further recited the 2016 MRI findings, as well as the claimant's pain management treatment for her back pain (Tr. 22).He recited Dr. Belinga's treatment note that the claimant gait findings were largely normal, as well as diagnostic considerations including degenerative joint disease, lumbar spine with radiculopathy, degenerative joint disease of the right hip, and gait difficulty (Tr. 23).  He then assigned substantial weight to the state reviewing physician opinions, including their assertion that the cane "could be used for comfort" (Tr. 24).

The claimant asserts that the ALJ erred in formulating her RFC, and the undersigned Magistrate Judge agrees.  The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).  Here, the ALJ asserted that the claimant could perform light work, including standing/walking up to six hours in an eight-hour workday, but ignored consistent evidence in the record that the claimant needed a sedentary, or "sit down," job.  Rather, it seems the ALJ took great pains to only report

-8-

the positive evidence as to the claimant's gait, which allowed him to find that the claimant could perform light work, in an effort to avoid finding her disabled because she could only perform sedentary work. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984). Moreover, the ALJ assigned great weight to the state agency physician opinion that the claimant could perform light work but much of the ignored evidence related to the claimant's pain in the back and lower extremities, and the repeated notes in the record regarding the claimant's gait abnormalities suggested that she could not.

As part of this error, the ALJ likewise failed to properly account for her use of a cane when he relied on the non-examining state reviewing physician opinions that the claimant only needed a cane for "comfort" despite the fact she had been prescribed the cane by her treatment provider. *See Staples v Astrue*, 329 Fed. Appx. 189, 191-192 (10th Cir. 2009) ("The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of [his] RFC. Instead, [he] only needs to present medical documentation establishing the need for the device."). *See also* Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7 (July 2, 1996). And in fact, the vocational expert testified that if the claimant used the cane "on a consistent and ongoing basis," there would be no light jobs available (but there would be sedentary jobs) (Tr. 65). *See* Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7 ("In these situations, too, it may be especially useful to consult a vocational resource in

order to make a judgment regarding the individual's ability to make an adjustment to other work."). This indicates further deliberate efforts to pick and choose among the evidence to use only favorable portions in support of the ALJ's opinion. *See Hardman*, 362 F.3d at 681 (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer*, 742 F.2d at 385-86.

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**